# WITNESS STATEMENT

TIME:2257
DATE:08/27/2005
PLACE:242 CLINTON St..

I, Patrolman George R McMann, voluntarily, without threats or promises, make the following statements:

Q: What is your name?
A: Patrolman George R McMann

Q: What is your date of birth?
A:

Q: What is your present address?
A: 242 CLINTON ST. WOONSOCKET

Q: What is your occupation?
A: POLICE OFFICER

Narrative: On 27 Aug 05 at approximately 2257 hrs. I was on patrol on East St. when I observed a Maroon Cadillac bearing RI registration SD 198 pull up to 104 Sayles St. The vehicle had its hazard lights on and parked in a No Parking zone as denoted by the yellow curbstone. I was going to inform the operator not to park there but decided to run the registration plate on my laptop computer before doing so. When I did, the plate came back active to Kenny Barnes but showed that his license was suspended. I pulled directly behind the vehicle and activated my overhead lights. I informed dispatch of my location and that I was out with the vehicle and to dispatch a backup unit. Lt. Picard responed from River St.

The driver exited the auto and came up towards me as I walked up to his car. I told him to stop and asked him what his name was. He stated that he was Kenny Barnes. I then told him to get back into the auto. He asked me what was wrong and I told him that he could not park his vehicle there and I asked him for his license. He handed me a RI operator license (2272758) which confirmed his identity. I explained to him that I was only going to ask him to move but when I ran his plate it showed that his license was suspended. He replied that he had just gone to RITT Ct. and had taken care of that and he had paperwork on him that would prove it. I asked him to show it to me.

After searching for his documentation he handed me paper work that showed that he had paid an amount to the Ct. for a judgement against him and that he had appeared in Ct. The paperwork did not state that his license was re-instated. At this point Lt. Picard arrived on scene. I told Barnes to wait in the auto. Also at this point a white female who had come from the north exit of the Glenark Landing apartments approached the auto saying that she was Barnes girlfriend and he was just here to pick her up. I asked her to step away and to go near the railings by the steps. She complied.

I spoke with Lt. Picard about the documentation that Barnes had presented to me and we both agreed that since there was no re-instatement documentation and that that NCIC still had his license suspended that he would be placed under arrest.

I told Barnes to exit the auto and I performed a pat down search for weapons. Barnes was in a

known drug area and I recognized that he was the same subject who had been shot several time some months earlier. At that time, he was found to be in the possesion of over three thousand dollars and was suspected to be a drug dealer. I did not locate any weapons

nor did I locate any contraband at the time. He was very jittery and I could see that his hands were shaking. I asked him if there was anything in the car that I should know about and he stated that there was not. I placed him into handcuffs without incident telling him that he was under arrest for operation of a MV while his right for such purpose had been suspended. I then placed him into my cruiser (305). I advised him that I would take him to the station, process him and release him on a summons to appear in District Ct. Lt. Picard asked him who he would like to tow his auto and he replied, Roy's Towing. Dispatch was then notified of this.

Lt. Picard went to the driver's side of the vehicle to perform an inventory search of the vehicle. After I had placed Barnes into my cruiser I went to the passenger front door to assist in the search. Officer Cote arrived from the Glenark as he was the detail officer on duty at that time. He assisted and acted as cover officer while we searched the vehicle. In the center console I located small green leafy bits that I suspected to be Marijuana. I also located cigar or "blunt" pieces in the front passenger map pocket. I could also smell a very strong odor that I immediately recognized to be the smell of Marijuana. Based on my knowledge, experience and past testing of the substance I recognized the smell. I verbalized this to Lt. Picard and told him that I suspected that there was more marijuana in the car.

We continued to search the auto with no other results of contraband other than the bits found in the center console. Officer Cote opened the trunk as I was checking the back passenger seat and asked me to go there. He told me that he smelled Marijuana in the trunk. I put my head inside and smelled the odor so strong that I said that there must be a lot of it inside. As we searched the trunk we sorted through a lot of clothing and other items but in the very back of the trunk resting up against the back seat I located a brown paper bag. I suspected that there was Marijuana inside and told Officer Cote so. When we looked inside we saw a very large clear plastic bag of what I suspected to be Marijuana along with a smaller clear plastic bag of the same. Also inside the bag was a boxed digital scale. I informed and then showed Lt. Picard what I had located.

I then went over to my cruiser and advised Barnes of his Miranda rights. He confirmed to me that he understood by answering "yes" to me while Officer Cote acted as witness. I asked him if her knew what was in the brown paper bag and he stated that he did not and that the auto was parked for the last six months. He told me at that point that "It don't matter what you found, you can't search my trunk". I told him that the search was incident to his arrest and that I had also found Marijuana in the front center console. He told me "I smoke weed, it was for my personal use." I advised him that that was fine but if there was anything else in the auto that he wanted to tell me about and he stated "you found everything that was in there". We were not able to locate any other additional contraband at that point in time.

Roy's towing arrived and the tow operator was instructed by Lt. Picard to transport the vehicle to the station and to disable it so that it could not be driven. He then hitched the Cadillac up to his truck and I escorted it to the station while transporting Barnes and the suspected Marijuana.

While at the station, I processed Barnes and then informed him that as per procedure in a

narcotics investigation of this sort that he would submit to a strip search. I brought him to the strip search area. He gave me all of his clothes except for his underpants and I searched them. I did not locate any contraband thus far. While in the presence of Officer Cahill, Det Turgeon, and myself I advised him that he was to turn around, bend over and spread his buttocks so that we could ascertain if he had placed any contraband between them. He bent over but not so that we could see. I told him that we had to see but he refused. He then stated that he felt uncomfortable. I advised him that there were several officer present and that he must proceed. He refused for nearly ten minutes and I told him several times that if he had nothing to hide that everything would be fine. He finally placed his right arm behind his back and showed me a clear plastic bag with a large amount of whitish yellowish substance which I suspected to be crack cocaine. He then bent over and spread his buttocks. There did not appear to be any other substance place there other that what he had given to me.

Prior to being placed into a cell I asked him if there was anything else that he had and he said at 2344 hrs. that "you got what I had to hide." He was then placed into cell #7 without incident.

Barnes was found to be in possesion of the suspected Marijuana (placed into two separate bags) and Cocaine, the digital scale, $685.00 and two cell phones. After I had tested both the Marijuana and Cocaine and received positive tests witnessed by Officer L'Heureux, I charged him with Possesion with the intent to deliver Marijuana, Possesion with the intent to deliver >1ounce of Cocaine and Operation of MV while his right for such purpose had been suspended.