IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR. NO. 05-119T |
| | : | |
| KENNY BARNES | : | |

**GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS**

Now comes the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Zechariah Chafee, Assistant United States Attorney, and hereby objects to defendant's Motion To Suppress as set forth in accompanying memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Zechariah Chafee

ZECHARIAH CHAFEE
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of January, 2006 a copy of the within Government's Objection To Defendant's Motion To Suppress, was mailed by regular mail, postage prepaid, to the following:

Edward C. Roy, Esq.
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, RI 02903

Paula Harvey

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR. NO. 05-119T
:
KENNY BARNES :

GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS

## I. INTRODUCTION

Defendant asks that the crack cocaine found on his person be suppressed as the fruit of an allegedly unjustified search of his car and the subsequent strip search. His motion should be denied.

## II. FACTS

On August 27, 2005 at about 10:52 pm Patrolman George McMann was patrolling in a car on East Street in Woonsocket. He saw a maroon Cadillac drive up and park in a No Parking zone by 104 Sayles Street. The zone was marked by a yellow curbstone.

Before telling the driver to move the car, McMann ran a check on the license plate on his laptop computer. The plate came back as registered to a Kenny Barnes, but the computer record showed that Barnes's license was suspended. By radio McMann asked that another officer be sent to the scene.

The driver of the Cadillac got out and approached. McMann told him to stop and asked his name. The driver said "Kenny Barnes." McMann told Barnes to get back in the Cadillac and asked for his drivers license. The license confirmed that the

man was Barnes.

McMann explained that his check had showed Barnes licence suspended. Barnes said that he had gone to the Rhode Island Traffic Court, had taken care of the problem, and had paperwork to show it. He showed McMann a paper that showed that he had paid the fine. The papers did not show that is his license had been reinstated. Lt. Picard arrived and McMann conferred with him about what to do.

At that point a woman came out of the exit from the Glenmark Apartments, came up to the police car, said that she was Barnes's girlfriend and said that Barnes was there to pick her up. McMann told her to step away and she did.

Lt. Picard and McMann agreed that since there were no reinstatement documents and NCIC still showed that the license was suspended that Barnes would be arrested.

McMann told Barnes to get out of his car and patted him down for weapons. McMann knew that they were in a drug area. He recognized Barnes as the same person who had been shot several times a few months earlier. At that time Barnes had had $2,932 on him and was suspected of drug dealing.

McMann could see that Barnes was very jittery and that his hands were shaking. McMann handcuffed Barnes and put him in the cruiser. He told Barnes that he would be taken to the station, processed, and released with a summons for District Court. Lt.

Picard asked who Barnes would like to tow his car and Barnes replied, "Roy's Towing."

Lt. Picard and McMann began an inventory search of the passenger compartment of the Cadillac. In the center console McMann located bits of marijuana and in a passenger side map pocket pieces of a "blunt". He also smelled a strong scent of marijuana. He told Lt. Picard that he thought that there was more marijuana in the car.

Another officer, Cote, had arrived and he opened the trunk. Cote smelled marijuana there. McMann found the smell so strong that he said that must be a lot of marijuana in the trunk. The officers searched through clothing and other items in the trunk and then came upon a brown paper bag resting against the back of the back seat. Suspecting marijuana, McMann looked in and saw a large clear plastic bag with marijuana and a smaller clear plastic bag with the same. He also saw a boxed digital scale.

McMann went back to his cruiser and gave Barnes his Miranda rights. Barnes acknowledged his rights and McMann questioned Barnes. Barnes denied knowing what was in the bag and said that the car had been parked for last six months. Barnes said. "It don't matter what you found, you can't search my trunk."

When told that McMann had found marijuana in the console, Barnes said that he smoked weed, and that it was for his personal use. He said that everything had been found that was in there.

Roy's Towing came and towed the Cadillac to the police station, followed by McMann with Barnes in his car. The police seized from Barnes $685.00 and two cell phones.

At the station McMann said that as part of procedure in a drug case Barnes would be strip searched. He was taken to a strip search room where he disrobed except for his undershorts. No drugs were found in Barnes clothes. In the presence of three male officers, Barnes was told to bend over and spread his buttocks so that the officers could see if he had any drugs held between them. The police had heard that Barnes hid his drugs between his buttocks. Barnes objected for nearly ten minutes, then finally put his right hand behind his back and produced a bag of crack.

Before being put into a cell McMann asked Barnes if there were anything else he had. Barnes replied. "You got what I had to hide." Barnes then went into the cell at 11:44 pm. He was later indicted federally for possession of cocaine base with intent to deliver.

## III. ARGUMENT

Defendant says that the Woonsocket police had insufficient grounds to strip search him. He argues that the seizure of the marijuana in the trunk of his car was the result of an illegal warrantless search. From that position he argues that the marijuana in the trunk therefore should not have been used by the

police to justify the strip search which produced the crack.

Thornton v. U.S., 124 S.Ct. 2127, 2132 (2004) says that an officer can search a vehicle's passenger compartment as a search incident to arrest even after the arrested person has left the car. e.g. U.S. v. Infante-Ruiz, 13 F3d 498, 503 (1st Cir. 1994). In the course of searching the passenger compartment after arresting Barnes, Officer McMann smelled a powerful scent of marijuana. This gave him strong, first hand probable cause to believe that there was a quantity of marijuana in the car.

The Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. U.S. Ross, 456 U.S. 798, 804-09(1982). U.S. Maldonado, 356 F3d 130, 137 (1st Cir. 2004). Thus McMann did not need a warrant to search the trunk of the Cadillac. In the trunk he found the two bags of marijuana and the digital scale. From this discovery the police had good grounds for believing that Barnes may well have had drugs secreted on his body.

The lawfulness of a strip search depends on whether the circumstances reasonably justify such an intrusive invasion of privacy. Bell v. Wolfish, 441 U.S. 520, 559(1979). In U.S. v. Cofield, 391 F3d 334 (2004) the 1st Circuit gave guidance as to strip searches. In considering the question of reasonableness,

a court must assess the totality of the circumstances, including "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." The inquiry is of a practical nature, calling for a sensible assessment of the circumstances. Id. 336.

There was ample justification for doing a strip search. The police had recovered a quantity of marijuana that went beyond personal use in a bag in the trunk of the car defendant was driving and that was registered to him. In the same bag with the drugs they found a scale. On Barnes's person was an unusual amount of cash, $685. The police knew that Barnes had earlier been shot several times and had at that time had nearly $3,000 in cash on him. The police knew that the word on the street was that Barnes "cheeked" his drugs. Given all these facts the police would have been negligent if they had not strip searched Barnes.

While any search of a prisoners private physical area is intrusive, the manner in which this search was done and the place of the search were as least humiliating as possible given the objective. It was done in a private room, not in an area open to the public. The officers did not physically compel the search, but spoke to defendant for nearly 10 minutes. Also, it might be noted, Barnes never did spread his buttocks but pulled the crack cocaine out himself. Remember, this was a narcotics

case, not a fraud case, or an immigration case, or a political corruption case. Narcotics are often secreted when they are transported, whether in an automobile or on the person of drug dealers or users. As the First Circuit observed in his assessing the reasonableness of a strip search, it "is common knowledge that controlled substances often are concealed on the person of users and dealers alike. Burns v. Loranger, 907 F2d 233, 238-39 (1st Cir. 1990).

**IV. CONCLUSION**

For the foregoing reasons defendant's motion should be denied.

Respectfully submitted

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Zechariah Chafee

ZECHARIAH CHAFEE
Assistant U.S. Attorney

CERTIFICATION OF SERVICE

I hereby certify that on this 13th day of January, 2006 a copy of the within Government's Memorandum in Support Of Its Objection To Defendant's Motion To Suppress was mailed by regular mail, postage pre-paid to:

Edward C. Roy, Esq.
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, RI 02903

Paula Hersey