UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : CR No. 05-119T

KENNY BARNES :

DEFENDANT'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SUPPRESS

In response to the request made by the Court on February 14, 2006 for memoranda from the parties, the defendant submits the following memorandum of law. At the hearing, the Court requested that counsel address three issues:

1. What is the legal standard that justifies a strip search?
2. What is a strip search?
3. Was the cocaine seized the product of a strip search?

**Argument**

1. What legal standard justifies a strip search?

The leading decision concerning the Fourth Amendment and the issue of strip searches appears to be the decision of the U.S. Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). In several recent decisions, the First Circuit Court

of Appeals has addressed the issue of strip searches in the context of both criminal and civil cases. *see* United States v. Cofield, 391 F. 3d 334, 336 (1st Cir. 2004); Savard v. State of Rhode Island, 338 F.3d 23 (1st Cir. 2003); Roberts v. Rhode Island, 239 F.3d 107 (1st Cir. 2001); Swain v. Spinney, 117 F.3d 1 (1st Cir. 1997). Under Bell, the Court must look at totality of circumstances, including " the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 US at 559.

The case law seems to suggest that the police need some suspicion that a defendant is hiding contraband or a weapon on his person, either in his clothing or beneath the clothing. *See* Cofield, 391 F. 3d, at 336-37. The mere fact that the defendant was being arrested for possession of marijuana does not, in and of itself, support the decision to strip search, especially in light of the Woonsocket Police Department policy on strip searches, produced via subpoena on the day of the hearing.

The written policy, which is attached hereto as Exhibit A, states, in pertinent part, that:

"1) It is not the policy of the Woonsocket Police Department to strip search all prisoners.
2) All strip searches will be approved by the Officer-In-Charge

and will be based on **probable cause** to believe that such a search will yield contraband, drugs or weapons.

3) The Officer-In-Charge will review the past record of the prisoner, as well as the information relayed to him by the arresting officer(s), prior to determining whether a strip search will be conducted. "

Woonsocket Police Department, Internal Policy, Number GO 00-05 ( Attached as Exhibit A). (Emphasis added).

The policy itself contemplates that the Woonsocket Police need some particularized suspicion about a suspect, probable cause. Probable cause to support an arrest necessarily involves some particularized facts pointing to a particular defendant. *See* Maryland v. Pringle, 540 U.S. 366, 371( *citing* Ybarra v. Illinois, 444 U.S. 85, 91(1979) ). At the hearing, there was no evidence to suggest that, as a matter of policy, all persons found to possess a controlled substance were strip-searched by the Woonsocket Police Department. The lack of any such testimony, when coupled with the policy's requirement of probable cause, allows this Court to infer that, as of the date of the incident, August 27, 2005, it was **not** the policy of the Woonsocket Police Department to strip-search all persons found to possess controlled substances. In order to justify this strip search, the Government must point to some evidence that led the police to suspect that, on the evening of August 27, 2005, the defendant was hiding on his person either contraband or a weapon.

In this case, there was no particularized suspicion that the defendant was hiding anything on his person. The testimony of Patrolman McMann did not establish that he observed any "furtive" movements by the defendant. A pat-down search at the scene of the arrest did not yield anything of significance. A search at the station, prior to the strip-search, likewise did not yield any contraband or indication of a weapon. No actions by the defendant subsequent to his arrest gave Patrolman McMann any heightened concern that the defendant might have secreted drugs or a weapon on his person.

McMann's testimony conflicted significantly with that of the only other Government witness, Det. Daniel Turgeon, on the critical issue of the justification for the decision to strip search Kenny Barnes.

McMann's testimony, when questioned by the Court, on the justification for the strip search was as follows:

> " THE COURT: Well, my question, let me try to be more specific. I'm talking about prior to the time that you began the strip search, did you have any personal knowledge or any information that Mr. Barnes was likely to conceal any drugs on his person.?
>
> THE WITNESS: Prior to the strip search?
>
> THE COURT: Yes.
>
> THE WITNESS: Yes. In the fact that Detective Turgeon had come down and stated as such and confirmed my suspicion that he may be

trying to hide something.

THE COURT: What was the basis for your suspicion that he might be hiding drugs on his person?

THE WITNESS: I guess the totality of the circumstance.

THE COURT: Well, what circumstance?

THE WITNESS: We had located a large amount of marijuana in the vehicle. He had been left alone in his vehicle for a period of time while the lieutenant and I had conferred. And at that point in time, we felt that, per policy, that we were going to perform a search.

***

THE COURT: Would a strip search normally be done to see if he was concealing a weapon?

THE WITNESS: In and of itself, I guess, no, but the totality of the circumstances deemed itself.

THE COURT: What circumstances? I don't understand. When you say the totality of the circumstances, what circumstances are you referring to, anything else besides what you just said?

THE WITNESS: * * * So having known him to be involved in drug activity and a suspected drug-related shooting, etc., having a large amount of cash on him, multiple cell phones, we found marijuana in his vehicle, and that's what I'm referring to as, I guess, the totality of the circumstances. And per that and per the fact that I suspected that he was, in fact, a drug dealer, we were going to perform that search.

THE COURT: Putting aside the basis for your suspicion, when you say the suspicion was confirmed by something that Detective Turgeon told you?

THE WITNESS: Detective Turgeon. He came down to make sure we strip searched him.

THE COURT: What did he tell you to confirm your suspicion?

THE WITNESS: He just asked me, are you going to strip search him and I said yes, we are.

THE COURT: Is that all he said?

THE WITNESS: I believe at the time, and then we proceeded to the strip search, because he said you probably want to make sure that you strip search him, and I said I'm going to. "

Tr. February 14, 2006 pp. 21-23

Turgeon's testimony was that he went down to where the strip search was going to take place but that that the search was complete by the time he arrived.

" Q. Good morning. As I understand your testimony, sir, and please correct me if I'm wrong, as of the time that you told Officer McMann that you thought Kenny Barnes should be strip searched, the strip search had already begun?

A. Correct.

Q. And Mr. Barnes was naked with his boxer shorts around his ankles; correct?

A. His knees or his ankles, somewhere. They were down, his genitals were exposed. "

Tr. February 14, 2006, pp. 47-48.

Clearly, to the extent that Patrolman McMann was relying upon Turgeon for

justification for the strip search of Kenny Barnes, the Court should note that Turgeon's testimony concerning both his role in providing information justifying the strip search and the timing of the information he gave McMann is inconsistent with McMann's testimony.

The timing of the strip search is also significant, should the Government argue that the strip-search was somehow related to the need to find any weapons. Patrolman McMann testified that the strip-search was begun after the entire booking process was completed. If McMann had concerns about the presence of a weapon, he should should have commenced the strip search as soon as Mr. Barnes entered the Woonsocket police station.

Clearly, the police did not comply with the Woonsocket Police Department policy set out above as the Officer-In-Charge, Lieutenant Picard did not approve the search and, more importantly, did not perform any review of Mr. Barnes' background. The failure of the Woonsocket Police to comply with their own internal policy is relevant towards this Court's assessment of the reasonableness of the strip-search. *See* United States v. Nicolella, 2002 U.S. Dist. LEXIS 15601 ( D.DE. 2002)( Because State Police had no written policy concerning the opening of closed containers during the course of an inventory search, warrantless search was not sufficiently regulated to satisfy requirements of Fourth Amendment. )

In conclusion, the Woonsocket Police Department was required to have probable cause that Kenny Barnes had secreted contraband on his person prior to requiring him to submit to a strip search on August 27, 2005.

2. What is a strip search?

It appears that the case law draws a distinction between two separate types of strip searches; a) a strip search, and b) a visual body cavity search. In Savard v. State of Rhode Island, *supra*, Judge Selya described the distinction that exists between the two types of strip searches: a "strip search" occurs when a law enforcement officer makes a visual inspection of a persons' naked body, while, a "visual body cavity" search takes place if the officer inspects the anal and genital areas of a suspect. Savard, 338 F. 3d, at 25. *See also*, Roberts v. Rhode Island, *supra*, 239 F.3d, at 108, n. 1 (citing Security & Law Enforcement Employees v. Carey, 737 F.2d 187, 192 (2d Cir. 1984) ); Commonwealth v. Prophete, 443 Mass. 548, 823 N.E. 2d 343 (2005) ( "strip search" defined as "one in which a detainee is commanded to remove the last layer of his or her clothing.")

In the instant case, the defendant would respectfully argue that the testimony of the two police officers at the Suppression Hearing, Patrolman McCann and Detective Turgeon, establishes clearly that the defendant was subjected to a visual body cavity search as his genital area was within the view of

the officers. Tr. February 14, 2006, pp. 47-48.

3. Was the cocaine seized the product of a strip search?

The Court requested that counsel discuss whether or not the cocaine base that was seized in this case represented the product of a strip search, as the defendant handed the cocaine to the police, after he had stripped naked and was standing with his boxer shorts around his ankles. Tr. February 14, 2006, pp. 47-48. The facts stated above yield but one conclusion: that the defendant handed the cocaine based to the police officers as a direct result of his being subjected to a strip search of his person. See Commonwealth v. Prophete, *supra*. ( Strip search involves a law enforcement officer "commanding" that a defendant remove last layer of his or her clothing).

Finally, the government cannot argue that the defendant "consented" to the seizure of the cocaine because the concept of consent necessarily implicates the right to refuse the search or seizure. Nothing in the record before the Court suggests that the Woonsocket Police Officers advised the defendant that he had the right to refuse the strip search of his person. Clearly, a reasonable person, standing in Kenny Barnes' shoes, would not have felt that he or she had the right to not consent to the strip search that was being performed. *See* United States v. Drayton, 536 U.S. 194, 206 (2002); Florida v. Bostick, 501 U.S. 429 ( 1991).

If the Court were to accept the defendant's argument that the Woonsocket Police lacked probable cause to conclude that he had concealed contraband on his person, then, logically, the police had no basis to demand that he remove his clothing. The police never should have been in a position to demand that he remove his clothing. Logically, the defendant would not have revealed the concealed cocaine if he was not placed in a position where the police only had one step left in their strip search-requiring that the defendant submit to a visual body cavity search.

**Conclusion**

For the reasons set forth herein, the Woonsocket Police Department lacked probable cause to suspect that the defendant had secreted contraband on his person, therefore, the strip search and visual body cavity search in this case violated the Fourth Amendment to the United States Constitution. The Court should grant the defendant's motion to suppress.

KENNY BARNES,
BY HIS ATTORNEY,

EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
( 401 ) 528 - 4281

CERTIFICATION

I hereby certify that I hand-delivered a copy of the within to Zechariah Chafee, AUSA on the 22nd day of February, 2006.