UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.                                              Cr. No. 05-119-T

KENNY BARNES

MEMORANDUM AND ORDER

ERNEST C. TORRES, Chief Judge.

Introduction

Kenny Barnes has moved to suppress a large bag of marijuana seized from the trunk of his car and a small bag of cocaine base seized from him during a strip search. After an evidentiary hearing, this Court rendered a bench decision denying the motion with respect to the marijuana, but reserved decision with respect to the cocaine base pending the receipt of memoranda from counsel.

The issue presented is whether the officers conducting the search had sufficient justification to perform a visual body cavity search. Because this Court answers that question in the negative, the motion to suppress is granted with respect to the cocaine base.

Background

On August 27, 2005, Barnes was sitting in the driver's seat of his motor vehicle which was illegally parked. Using the license plate number on that vehicle, George McMann, a Woonsocket police officer, checked the National Crime Information Center database on

his laptop computer and discovered that Barnes's driver's license had been suspended.

Officer McMann approached Barnes's vehicle and was joined by Lieutenant John Picard and Officer Cote, both of the Woonsocket Police Department. McMann and Cote recognized Barnes as the victim of what appeared to be a drug-related shooting that had occurred about a month earlier. No evidence was presented regarding the kind of drug involved.

When the officers reached Barnes's vehicle, they detected a pungent odor of marijuana and observed bits of marijuana and pieces of a "blunt" in the passenger compartment. After arresting Barnes, they proceeded to search the vehicle and, in the trunk, discovered a large bag of marijuana, a smaller bag of marijuana, and a digital scale. After patting Barnes down for weapons and finding none, the officers took him to the Woonsocket police station.

At the police station, McMann and another officer, Michael Cahill, escorted Barnes to a private area. McMann instructed Barnes to remove all of his clothes. No contraband or weapons were found, but McMann, then, instructed Barnes to bend over and spread his buttocks so that the officers could determine whether he had anything concealed in his anal area. Barnes was reluctant to do so despite being assured that the officers intended to make only a very brief visual examination, but the officers made it clear that Barnes would have to comply.

2

While these events were taking place, Detective Daniel Turgeon learned that Barnes had been arrested and went to the room in which Barnes was being searched. Because Turgeon had information that Barnes was a drug dealer who was reputed to secrete drugs between his buttocks, Turgeon said to McMann, "You're going to strip search him, aren't you?" At that point, Barnes reached between his buttocks and pulled out a plastic bag containing the cocaine base in question.

Barnes has been charged, in state court, with possession of marijuana and possession of cocaine base with intent to deliver; but, in this case, he has been charged only with possession of cocaine base with intent to deliver.

## Analysis

The Fourth Amendment prohibits "unreasonable" searches and seizures. Warrantless searches generally are considered to be <u>per se</u> unreasonable but there are several well-established exceptions.

Once exception to the warrant requirement permits officers to perform a full body search incident to a lawful arrest. <u>Swain v. Spinney</u>, 117 F.3d 1, 5-6 (1st Cir. 1997) ("'[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that amendment.'")(quoting <u>United States v. Robinson</u>, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L. Ed. 2d 427 (1973)). However, "[h]olding the Warrant Clause

inapplicable . . . does not leave law enforcement officials subject to no restraints. This type of police conduct 'must [still] be tested by the Fourth Amendment's general prescription against unreasonable searches and seizures.'" Swain v. Spinney, 117 F.3d at 6 (quoting United States v. Edwards, 415 U.S. 800, 808 n. 9, 94 S.Ct. 1234, 1239 n.9, 39 L. Ed. 2d 771 (1974)).

Determining whether a search is reasonable "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Swain, 117 F.3d at 6 (citing Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). More specifically, with respect to a "strip and visual body cavity" search, a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. (citing Wolfish).

In this case, it cannot be disputed that the search of Barnes was conducted in a reasonable manner and at a suitable location. The uncontroverted evidence demonstrates that the officers acted very professionally and that Barnes was searched in a private area of the police station with only male officers present. Nor is there any suggestion that the officers had any improper motive for performing the search. Accordingly, the only issue is whether, under the circumstances, there was sufficient justification for the scope of the search to make it reasonable.

I.  The Legal Framework

   A.  Scope of the Search

The extent to which the search of a person infringes on the person's privacy must be proportionate to the need for performing it. Accordingly, whether a body search is deemed reasonable depends, in part, on whether its "scope... comport[s] with the justification for its inception". Burns v. Loranger, 907 F.2d 233, 236 (1st Cir. 1990) (citing New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S. Ct. 733, 742-43, 83 L. Ed. 2d 720 (1985)).

Since the extent to which privacy is infringed is a function of the type of search performed, courts have recognized a distinction between a full body search and a strip search. Swain, 117 F.3d at 6-7. Courts also have recognized distinctions between strip searches and various types of body cavity searches. Blackburn v. Snow, 771 F.2d 556, 561 n.3 (1st Cir. 1985) ("A 'strip search' though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A 'visual body cavity search' extends to visual inspection of the anal and genital areas. A 'manual body cavity search' includes some degree of touching or probing of body cavities.").

While a visual body cavity search may be performed incident to a strip search, it is not an inherent component of a strip search. See Roberts v. Rhode Island, 239 F.3d 107, 108 n.1 (1st Cir. 2001).

Rather, it is an extension of a strip search that involves more of an intrusion into an individual's privacy. Wood v. Clemons, 89 F.3d 922, 928 (1st Cir. 1996) (describing a body cavity search as an "extreme intrusion" on personal privacy); Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1271 (7th Cir. 1983)(a visual body cavity search represents a "significantly greater intrusion" than a full body search authorized by Robinson). Consequently, a body cavity search requires greater justification than a simple strip search. Swain, 117 F.3d at 6-7.

B. Justification for the Search

Generally, probable cause is not required to justify a strip and visual body cavity search performed pursuant to a lawful arrest. Swain, 117 F.3d at 6; Roberts, 239 F.3d at 110. What is required is "reasonable suspicion" that the "arrestee is concealing contraband or weapons" in the areas being searched. Swain, 117 F.3d at 6.

The extent to which the suspicion must be specific to a particular arrestee and the scope of the search justified by that suspicion turn on a number of factors such as the nature of the offense, the items that are the object of the search, and the likelihood these items may be concealed in the areas being searched. Thus, individualized suspicion is not necessary to justify a visual body cavity search of a prison inmate who has had contact with outside visitors because such contact may provide a

6

means of smuggling contraband into the prison, Roberts, 239 F.3d at 111, but a blanket policy of performing body cavity searches of all prisoners without any individualized suspicion may not be justified, id. at 110; Swain at 7 (collecting cases). By the same token, a strip and visual body cavity search of an inmate may be justified "by the fact that [an] inmate was charged with a violent felony," Roberts, 239 F.3d at 112 (citing Dufrin v. Spreen, 712 F.2d 1084, 1087 (6th Cir. 1983)), but when a person is arrested for a minor offense, officers must have "a reasonable suspicion that [the] particular detainee harbors contraband prior to conducting a strip or visual body cavity search." Id. at 110 (citing Swain, 117 F.3d at 7).

In the case of a person who is arrested for a drug trafficking crime, a simple strip search for contraband and weapons, ordinarily, is justified because "[i]t is common knowledge that controlled substances often are concealed on the person of users and dealers alike," Burns, 907 F.2d at 238-39, and because it is well known that firearms are "tools of the trade," United States v. Perrotta, 289 F.3d 155, 165 (1st Cir. 2002). However, when the search extends to body cavities, more individualized suspicion is required. See, e.g., Hunter v. Auger, 672 F.2d 668, 675 (8th Cir. 1982) (strip and visual body cavity search required reasonable suspicion that "drugs or other contraband are concealed in the particular place [prison officials] decide to search"); cf. United

States v. Brack, 188 F.3d 748, 759 (7th Cir. 1999) (upholding strip and visual search where "it was entirely reasonable...to suspect that [suspect] was carrying contraband in a body cavity").

II. Application of the Principles

In this case, although Barnes, himself, produced the bag containing cocaine base before the visual cavity search actually was performed, it is clear that he did so only because he recognized that, otherwise, it would be performed. Therefore, the question is whether officers had justification to perform a cavity search. See Timberlake v. Benton, 786 F. Supp. 676, 688 (M.D. Tenn. 1992) (the fact that a gun voluntarily is handed over by arrestee under threat of imminent strip search does not provide justification for the search).

It cannot be disputed that the officers conducting the search had ample reason to suspect that Barnes might have drugs or weapons concealed on his person. They had found a significant quantity of marijuana and a scale in the trunk of Barnes's vehicle, indicating that Barnes was engaged in drug trafficking. Moreover, as already noted, it is common knowledge that drug traffickers often secrete drugs and weapons on their persons. Those facts clearly justified a strip search, especially since a concealed weapon could have posed a serious risk to the safety of the officers and others.

However, once Barnes's clothes were removed, there was much less justification for taking the further step of conducting a

visual body cavity search. Since it seems highly unlikely that Barnes could have concealed a weapon in his anal area, the only possible justification for conducting a visual body cavity search would have been to find contraband. Here, though, there has been no explanation as to what justification the officers conducting the search may have had to believe that Barnes had contraband concealed in his anal area.

While Detective Turgeon had information that Barnes was reputed to "cheek" drugs, that information was not communicated to Officer McMann before the search was conducted. Therefore, it could not have been the basis for any reasonable suspicion on McMann's part.[1]

Nor is the fact that Barnes, apparently, was involved in selling marijuana sufficient, by itself, to justify a body cavity search. Because marijuana is relatively bulky, it appears unlikely that marijuana would have been concealed in Barnes's anal area. Furthermore, the fact that a large quantity of marijuana was in the trunk of Barnes's vehicle suggests that Barnes would have had little reason to conceal an additional amount in a body cavity.

---

[1] There might be some basis for contending that police, inevitably, would have discovered the cocaine base, because it is likely that Detective Turgeon had information that Barnes was reputed to be a drug dealer who concealed drugs between his buttocks, and Turgeon wanted to be sure that a visual body cavity search was performed. See United States v. Scott, 270 F.3d 30, 42 (1st Cir. 2001) (applying doctrine of inevitable discovery to permit admissibility of evidence). However, no such contention was argued or briefed.

9

While it is possible that a person who sells marijuana also might sell other controlled substances that would be more readily concealed in bodily cavities, something more than mere possibilities are required to support reasonable suspicion. Here, the record is devoid of any evidence that the officers conducting the search had any basis for believing that Barnes was, or that marijuana dealers, in general, are likely to also sell such drugs.

In short, it paints with too broad a brush to say that every person arrested on a drug charge automatically is subject not only to a strip search but also to a visual body cavity search, even in the absence of any articulable basis for suspecting that contraband is concealed in the cavity to be searched. While evidence of drug trafficking may be sufficient to justify a strip search, see United States v. Cofield, 391 F.3d 334, 336-37 (1st Cir. 2004), some more individualized suspicion, ordinarily, is required to extend the search to bodily cavities.

For all of the foregoing reasons, Barnes's motion to suppress the cocaine base is hereby GRANTED.

IT IS SO ORDERED,

_____
Ernest C. Torres
Chief Judge

Date: June 8, 2006