IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR. NO. 05-119T
:
KENNY BARNES :

**GOVERNMENT'S STRIP SEARCH MEMORANDUM**

## I. INTRODUCTION:

The court has asked counsel what is the legal standard which must be satisfied in order to justify a strip search. The court has also asked what is a strip search. Is there a distinction between having an arrestee strip searched and having that arrestee spread his buttocks so that the police officer can see if drugs or a weapon are concealed between the buttocks.

## II. ANALYSIS:

### A. The Legal Standard

The First Circuit addressed the question of the legal standard in the recent case of U.S. v. Cofield, 391 F.3d 334 (2004). The Circuit said "the lawfulness of a strip search depends on whether the circumstances reasonably justify such an intrusive invasion of privacy," citing Bell v. Wolfish, 441 U.S. 520, 559 (1979) and Swain v. Spinney, 117 F.3d, (1st Cir. 1997). In Swain this Circuit held that the strip and the visual body cavity search of an arrestee must be justified, at least, by reasonable suspicion. Swain has a long discussion of the issue

but the conclusion is that the standard is reasonable suspicion.

Roberts v. Rhode Island, 239 F.3d 107 (1st Cir. 2001) discusses the ACI blanket policy of visual body cavity searches of all detainees coming to the intake center including those charged with misdemeanors not involving allegations of violence or drug dealing. Though finding this practice unconstitutional, the court reaffirmed the Swain reasonable suspicion test and left open the door that felony drug charges could be considered a per se reasonable basis for a strip search, including a visual body cavity search.

In Cofield, decided in 2004, that is, more recently than Roberts, the Court speaks of "reasonableness". The Court said, "In considering the question of reasonableness, a court must assess the totality of the circumstances, including the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." The inquiry is of a practical nature, calling for a sensible assessment of the circumstances (Cofield p.336). Whereas Roberts puts the focus on justification, Cofield puts other factors in play.

In the instant case the defendant Barnes had been arrested for possessing marijuana with intent to deliver, a drug felony, which is a distinction from Swain, Roberts, and Savard v. Rhode Island, 338 F3d 23 (1st Cir. 2003) which all involved

misdemeanors. The facts known to Officer McMann were that defendant had a foot-long plastic bag of marijuana in his car, some $685 on him and two cell phones. He had been the victim of several gun shot wounds in what was believed to be a drug related shooting. It was clear he was not just a casual user of marijuana but, rather, a dealer. Important too, Barnes had been left alone in the police cruiser while the police searched his car, thus giving him a chance to secrete any drugs from his pocket to his buttocks or groin. At that point he was only being brought into the station for paperwork and release on a charge of driving with a suspended license. He would not have expected a strip search. On the information above a "sensible assessment of the circumstances" would call for a visual cavity search to be sure no drugs were on defendant's person.

There is no sense in doing a strip search if one is not going to check the arm pits, the genitals, and between the buttocks, all places where drugs could be hidden. If the police cannot perform a strip search of a drug dealer without specific information as to that individual's practice then strip searches are off the table because how often would the police have specific information that a defendant had drugs hidden in his underclothes or on his body. The gun in Cofield would not have been found. As the Court noted in Cofield, "it is common knowledge that controlled substances often are concealed on the

person of users and dealers alike." Burns v. Loranger, 907 F.2d 233, 238-39 (1st Cir. 1990)

Significantly, however, in this case there was someone with information that defendant hid his drugs between his buttocks. Detective Turgeon knew from reliable street sources about Barnes's practice.

The fact that Turgeon knew specifically of Barnes practice of hiding his drugs between his buttocks should be conclusive on the reasonableness of a visual body cavity search.

Perhaps the court discounts Turgeon's knowledge because he did not import it directly to McMann who directed the strip search of Barnes.

First Turgeon did tell the officer in charge that he wanted Barnes strip searched. The officer in charge gave the go-ahead to McMann when McMann said he intended to strip search Barnes. Second, Turgeon was present when the officers were trying to persuade Barnes to submit to the standard visual body practice of the strip search. If Turgeon's presence on the scene makes a difference, he was present on the scene before defendant handed over the drugs he had clenched between his buttocks. A visual body cavity search did not produce the drugs, rather the strong likelihood of that search occurring impelled Barnes to surrender his drugs.

**B. Types of Strip Searches**

A strip search is any search which exposes the private parts of the searchee. For instance in Cofield, the search required the searchee to drop his undershorts so the police could look into the shorts. This avoided a touching of the searchee. There is a distinction between (1) exposing the searchee's genitals, buttocks, or breasts to view and (2) having him or her bend over and spread their buttocks. By the balancing approach of Cofield having someone stand naked for visual observation is not as intrusive a search as visually inspecting the cleft of the buttocks and the anus. An even more intrusive search would be if the police touched the naked searchee or put a gloved finger into the searchee's anus looking for packets of drugs hidden the searchee's rectum.

As a practical matter the facts of reported cases and common sense compel the conclusion that if the police are going to strip someone completely naked to search them they are certainly going to take the next step of visually inspecting the places on the body where drugs or a small weapon such as a small

jacknife could be hidden i.e. the armpits, buttocks cleft, or, in the case of a drug packet, between the penis and scrotum.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Zechariah Chafee

ZECHARIAH CHAFEE
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of February, 2006 a copy of the within Government's Strip Search Memorandum, was mailed by regular mail, postage prepaid, to the following:

Edward C. Roy, Esq.
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, RI 02903

Paula Hassey