UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : Cr No. 05-119 T

KENNY BARNES :

DEFENDANT'S SENTENCING MEMORANDUM

______The defendant hereby submits the following sentencing memorandum in support of the defendant's request for a sentence below the applicable sentencing guidelines.

1. Advisory Guideline Range

The Pre-Sentence Report calculates Mr. Barnes' advisory guideline range at 188-235 months. PSR at ¶ 54. This guideline range results from the net offense level of 31 combined with a criminal history category of VI as a result of the defendant's status as a career offender. PSR at ¶ 35. According to the PSR scoring Mr. Barnes' prior convictions results in seven criminal history points, placing him in criminal history category IV. Mr. Barnes' status as a career offender results in a two level increase in his criminal history from category IV to category VI. If Mr. Barnes did not qualify as a career offender, the applicable guideline range would be 70-87 months of imprisonment, based upon a net offense level of 23 and a criminal history category of IV. *See* PSR at ¶ 15.

2. Defendant's status as a career offender

As a result of three convictions set forth in the PSR, at paragraphs 30, 32, 33 and 34, Mr. Barnes is treated as a career offender for guideline purposes under the provisions of U.S.S.G.

4B1.1. An examination of the three convictions reveals that each involved the street-level sale of small amounts of crack cocaine.

The following table has been created based upon information contained in the Pre-Sentence Report. The table depicts each career offender conviction, the defendant's age at the time of conviction and a description of the facts underlying the conviction.

| Conviction | Age | Description of controlled substances |
|---|---|---|
| Paragraph 32 | 19 | Six plastic bags of crack cocaine. |
| Paragraph 33 | 19 | Uncertain amount, but clearly a street sale. |
| Paragraph 34 | 23 | Five plastic bags and $239 in cash. |

3. The Career Offender Guideline

The above-noted convictions trigger the application of the career offender guideline provisions contained in the United States Sentencing Guidelines, U.S.S.G. § 4B1. In this case, the career offender guidelines increase Mr. Barnes' base offense level from a level 26 to a level 34. *See* P.S.R. at ¶ ¶ 15 and 22. Mr. Barnes' criminal history category also increased from a level IV to a level VI, as all career offenders are given a criminal history category VI. *See* U.S.S.G. § 4B1.1(b).

Because of the triggering effect of the prior offenses listed in Section 2, above, Mr. Barnes' Offense Level has changed from a level 26, criminal history category IV to a level 34, criminal history, category VI. If the defendant's Base Offense level was 26, after deduction for three points for acceptance of responsibility, the Total Offense level would be found at level 23, with a sentencing range of 70-87 months of imprisonment.

The United States Sentencing Commission has acknowledged that the career offender guideline provisions are among the most inequitable provisions in the Sentencing Guidelines. *See* U.S.S.C. *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* at 133-34 (2004). [1]

The United States Senate, in its report on 28 U.S.C. § 994(h), which authorized the Sentencing Commission to adopt the present career offender guideline structure, stated that the goal of construction of the guideline was a "consistent and rational implementation of the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S.Rep. No. 98-225 at 175 (1983) (emphasis supplied). The career offender guideline goes far beyond this congressional mandate by establishing advisory guideline sentences that are excessive when compared to the goals of sentencing as set forth in 18 U.S.C. § 3553(a).

The present career offender guideline structure is inconsistent with the "parsimony" provision of 18 U.S.C. § 3553(a), which directs a sentencing judge to "impose a sentence that is sufficient, but not greater than necessary" to effectuate the goals of sentencing. This provision was described by the United States Supreme Court as the "overarching" consideration for district courts when imposing sentence. Kimbrough v. United States, __U.S.__, 128 S.Ct. 558, 570, 169 L. Ed. 2d 481, 494 (2007).

More importantly, the existing career offender guideline structure also fails to consider the mitigating factors that drive a district judge's discretion in imposing a sentence. For instance, as is the case here, the provisions of Section 4B1.1 set an offense level for a defendant

[1] Hereinafter "Fifteen year report", available at http://www.ussc.gov/15_year/15year.htm.

without consideration of the nature of the prior offenses. A two time convicted major drug trafficker is treated the same as a street-level offender like Kenny Barnes. Logic would seem to dictate that a major drug dealer be treated more harshly than a street-level seller. The inequity of this illogical treatment of defendants serves as a basis for the court to exercise its discretion in imposing a sentence lower than that called for by the career offender guidelines.

In light of Kimbrough, *supra*, and United States v. Booker, 543 U.S. 220 ( 2005), this court should consider the excessively harsh nature of the sentence provided for by the career guidelines in this case. Mr. Barnes' qualifying convictions involve small, street level sales. In addition, two of the convictions took place before Mr. Barnes was twenty (20) years of age. Mr. Barnes' youth at the time of his convictions and the relatively minor nature of the convictions weigh in favor of this court exercising its discretion and imposing a sentence lower than that called for by the advisory guideline range.

Recently, the United States Court of Appeals for the First Circuit, in United States v. Boardman, 528 F.3d 86 (2008) held that, under Kimbrough, a district court would have discretion to vary from the guidelines based upon a policy disagreement concerning the inclusion of non-residential burglary offenses as career offender predicates. Slip Op. at 4. In Boardman's case, the district court was compelled, based on prior circuit precedent, [2] to treat his non-residential burglary convictions as career offender predicates. Despite the fact that the district court was bound to do so, the Court of Appeals held that the district court could vary from the guidelines based upon a policy disagreement as to the treatment of non-residential

---

[2] United States v. Fiore, 983 F.2d 1 (1st Cir. 1992).

burglaries by the career offender guidelines.

> The district court properly recognized that it was bound by *Fiore* to treat the guideline as we had interpreted it; but we do not see why disagreement with the Commission's policy judgment (as expressed in the guideline we interpreted in *Fiore*) would be any less permissible a reason to deviate than disagreement with the guideline policy judgment at issue in *Kimbrough*.

Slip Op. At 3-4.

Several district courts, in decisions critical of the career offender guidelines, have imposed sentences substantially lower than that called for by the guidelines.

Recently, in United States v. Moreland, slip op., 2008 WL 904652 (S.D. W. Va. April 3, 2008), the court rejected a career offender guideline sentence and imposed a sentence of one hundred twenty (120) months. The court criticized the manner in which the career offender guidelines treat the term "controlled substance offense" Slip op. at *36.

> "Any offense that falls within this definition *must* be counted as a predicate offense, regardless of the amount of drugs involved, the actual punishment imposed, or the length of time between the prior and present offenses.

Slip op. at 36.

In United States v. Fernandez, 436 F. Supp. 2d 983 (E.D. Wis. 2006), the court rejected a career offender guideline range of 188 to 235 months and imposed a sentence of 126 months. In imposing sentence, the court noted that the career offender guideline would pose a conflict with the mandate of 18 U.S.C. § 3553(a) in the case of street-level dealers. 436 F. Supp. 2d at 989. *See also* United States v. Malone, slip op., U.S. Dist. LEXIS 13648 (E.D. Mich. Feb. 22, 2008) (Rejecting career offender guideline as not justified by increased risk of recidivism among other factors).

The career offender guideline, like the crack cocaine guideline in Kimbrough, *supra*, does not "exemplify the Commission's exercise of its characteristic institutional role". Kimbrough, at 128 S. Ct. at 575.

The career offender guideline treats street sellers, like Kenny Barnes, the same as wholesale dealers, who garner a much larger share of the profits generated by the sale of narcotics. Under the circumstances of this case, the court has the discretion under Kimbrough and Boardman to sentence this defendant to a sentence lower than that called for by the career offender guidelines.

4. The Career Offender Guideline Provisions Promote Racial Disparity And Result In Sentences Longer Than Necessary To Incapacitate

In its fifteen year report, the Commission noted that black defendants comprised 26% of the defendants sentenced under the guidelines but 58% of the defendants sentenced as career offenders. Fifteen year report, at 133. While the primary justification for imposing lengthy sentences on repeat drug sellers appear to be incapacitation, the Commission's data suggests that the rate of recidivism is lower for defendants who are designated as career offenders based upon their prior drug dealing convictions. The Commission noted

> The overall rate of recidivism for category VI offenders two years after release from prison is 55 percent (USSC, 2004). The rate for offenders qualifying for the career criminal guideline based on one or more violent offenses is about 52 percent. But the rate for offenders qualifying only on the basis of prior drug offenses is only 27 percent. The recidivism rate for career offenders more closely resembles the rates for offenders in the lower criminal history categories in which they would be placed under the normal criminal history scoring rules in Chapter Four of the *Guidelines Manual*.

Fifteen year report, at 134.

The Sentencing Commission's data suggests that, for defendants, like Kenny Barnes, who are designated as career offenders solely because of prior drug selling convictions, the likelihood of recidivism is lower than for purely violent offenders. The career offender guidelines, therefore, do not reflect the Commission's own data and experience. As with the crack cocaine guidelines in Kimbrough, *supra*, the career offender guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." 128 S. Ct. At 575. For defendants who are career offenders because of drug selling, the need for incapacitation is appreciably less. The fact that the career offender guidelines do not allow for a lower sentence for less culpable street sellers serves as justification for the court's exercise of its discretion under Booker, Kimbrough and Boardman.

5. Analysis Of 18 U.S.C. § 3553(a) Factors

A. Nature of the offense

The facts of this case show that Kenny Barnes was involved in a dangerous activity, selling crack cocaine on the street. This activity is dangerous for the public and large and also for Mr. Barnes, as evidenced by the fact that he was shot several weeks before his arrest on this case. Despite the prior incident, there was no indication in the facts of this case that Mr. Barnes had ever possessed a firearm.

B. Defendant's characteristics

The PSR indicates that Mr. Barnes was raised in an abusive environment where drug use was common. PSR at 43. Mr. Barnes related the following to the Probation Officer.

> The defendant stated that during his youth, he grew up in the Mission Hill projects in Boston, and led a life on the streets. He often found trouble for no apparent reason. Mr. Barnes

> disclosed that his life was difficult, and he was brought up around drug use and drug dealing from a very young age. He stated that everyone he knew in his life was involved with using drugs, including his father, and selling drugs. Therefore, he advised it was only a matter of time before he became involved in this lifestyle that was second nature to him.

PSR at ¶ 43.

While the environment in which Mr. Barnes grew up is not unusual, it is noteworthy that he had no real strong father figure in his life. Experience shows that male defendants who grow up in drug-infested environments tend to emulate the behavior to which they are exposed. The environment in which Mr. Barnes grew up does not justify his actions in this case, but, merely serves to explain why he became a street-level drug seller.

Mr. Barnes does display positive character traits. He is close with his family, who support him through the problems associated with this matter. PSR at ¶ 44. Mr. Barnes has also expressed in his letter to the court that he desires to be a good father to his children. His mother confirmed this fact in an interview with the probation office. PSR at ¶ 44.

The PSR describes Mr. Barnes' limited educational and vocational skills. PSR at ¶ 50. Without such skills it is not surprising that he has no significant job history. Mr. Barnes clearly will benefit from educational and vocational opportunities while serving his sentence. Given his lack of vocational skills, a sentence substantially lower than the career offender guideline sentence would serve to motivate him toward positive achievements while incarcerated.

C. <u>Need for deterrence and to promote respect for the law</u>

There is no question that the court needs to send a message in all cases which involve

the sale of crack cocaine. The imposition of a substantial sentence promotes respect for the law and deters others from committing similar acts. The sentence called for by the guidelines, however, 188 to 235 months, is far greater than necessary to promote respect for the law. In fact, there is authority that the imposition of long sentences in fact discourages respect for the law. In 1997, the Sentencing Commission conducted a public opinion survey and found that "there was little support for sentences consistent with most habitual offender legislation. To be sure, longer previous criminal records led to longer sentences, but at substantially smaller increments than under such initiatives as 'three strikes-and-you're out.' " *See* Peter H. Rossi & Richard A. Berk, U.S. Sentencing Commission, Public Opinion on Sentencing Federal Crimes, Executive Summary (1997), http://www.ussc.gov/nss/jp_exsum.htm; *See also* Fifteen year report at 133-34.

6.. Defense Counsel's Sentencing Recommendation

Based upon the foregoing, defense counsel would respectfully urge that the sentence that is sufficient, but not greater than necessary, to reflect the various factors set out in 18 U.S.C. § 3553(a) is a sentence of 78 months of imprisonment.

KENNY BARNES,
By his attorney,

/s/ Edward C. Roy, Esquire
EDWARD C. ROY, ESQUIRE
ASSISTANT FEDERAL PUBLIC DEFENDER
10 WEYBOSSET STREET, SUITE 300
PROVIDENCE, RI 02903
(401) 528 - 4281
Edward_Roy@fd.org

CERTIFICATION

I hereby certify that I caused a copy of the within to be served upon Zechariah Chafee, AUSA on the 2nd day of September, 2008 by way of ECF case filing and on Kristin Mattias, USPO.

/s/ Edward C. Roy, Esquire